AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Alabama

RECEIVED
2013 OCT 24 A 10: 26

DEBRA P. ~~~~~~
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| United States of America | ) |
|---|---|
| v. | ) |
| DAVID GRACE, AKA BLACKWOOD | ) Case No. 1:13-mj-202-WC |
| | ) |
| | ) |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  October 10, 2013  in the county of  Houston  in the  Middle  District of  Alabama , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 7 USC 2156 | Possession of dogs for fighting purposes |

This criminal complaint is based on these facts:
See Attached Affidavit.

☒ Continued on the attached sheet.

_____
Complainant's signature

Raymond D. Smith Jr.  Special Agent FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 10/24/2013

_____
Judge's signature

City and state:  Montgomery, AL           Wallace Capel, Jr., U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Raymond B. Smith Jr., being duly sworn, hereby depose and state as follows:

1. This affidavit is submitted in support of an application for a criminal complaint against **David Bernard Grace** for violations of 18 U.S.C. § 49 (Enforcement of Animal Fighting Act) and 7 U.S.C. § 2156 (Animal Fighting Venture).

## Affiant's Experience

2. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI), and have been employed in that capacity since 1985. I am currently assigned to the Mobile Division, Montgomery Resident Agency of the FBI.

3. During my career, I have spent approximately 15 years investigating drug related violations. I have recently been working on an Organized Crime and Drug Enforcement Task Force (OCDETF) case investigating violations including illegal activity including violations of: Title 7, United States Code, Section 2156 (prohibitions against animal fighting ventures), Title 18, United States Code, Section 1955 (illegal gambling business), 1952 (interstate travel in aid of racketeering), 371 (conspiracy to commit federal offenses), and Title 21, United States Code, Section 841 (narcotics distribution).

4. I have personally participated in this investigation. In addition, I have received information from other federal law enforcement officials. I have also reviewed documents obtained from local law enforcement agencies. The statements contained in this affidavit are based on my own observations and review of documents, or reliable information provided to me by other law enforcement personnel. This affidavit is being submitted for the limited purpose of securing a criminal complaint. I am setting forth only those facts and circumstances which I believe are necessary to establish probable cause for the issuance of the requested criminal complaint.

## Background on Animal Fighting Ventures

5. In the United States, illegal animal fighting ventures primarily involve animal fights between canines, or dogs, belonging to the American Pit Bull Terrier

1

breed. A dog fight occurs when two dogs are released by their handlers to attack each other and fight. The fight ends when one dog withdraws or displays signs of submission.

6.  By its nature, dog fighting ventures typically involve numerous individuals who act in various roles in each venture or activity. The "promoter" makes the necessary arrangements to conduct a fight, often referred to as a "match," "fight," or "show" and often hosts the fight. Promoters (1) arrange the location of the fight (which is often a guarded secret until shortly before the fights are set to begin); (2) ensure the pit (a specialized fighting arena often constructed of plywood and built to specific dimensions, with carpeting for the floor) is constructed; (3) arrange for a "referee;" (4) arrange the monetary bets placed by the respective fighters; (5) arrange for the payment of "forfeit" money; (5) and in some cases provide food and drink to the fight attendees. The promoter or a facilitator will supply weighing scales, dog washing equipment, break sticks, and any other equipment needed for a fight. "Facilitators" are individuals that assist the dog fighters involved. Facilitators are often dog fighters themselves, and may or may not have an animal involved in a match fight occurring on that occasion for the fight(s) they are facilitating. The "referee" officiates and "calls" dog fights (similar to a boxing referee) and assures that very specific dog fighting rules are followed by the "handlers." In the Middle District of Alabama, most animal fighting ventures adhere to the "Cajun Rules" which designate among other things, the size of the fighting arena or "box," how dogs are handled, time constraints, and the methods of fighting. The referee is often well established within dog fighting circles and someone that dog fighters trust to officiate the fight fairly according to the agreed upon rules of the fight. A referee is typically paid a fee to officiate each fight. "Spectators" typically attend dog fights and are motivated to attend for different reasons. The majority of spectators are relatives or close friends or associates of dog fighters. Spectators are often required to pay an entry fee to attend the dog fight and often attend to participate in gambling that occurs at match fights in the form of "side bets" or wagers, often referred to as "gamble." A "handler" is a person responsible for holding and handling dogs before and during the fight. The handler, which may be the dog owner or a close associate of the owner, will be inside the "box" or "pit" during the fight. If the handler is not the owner, they will typically be paid a percentage of the primary bet between the dog owners.

7.  "Serious fighters" (individuals involved in the illegal sport of dog fighting) as defined by the Humane Society of the United States, are those individuals who typically own a dozen or more dogs. They fight dogs on a national

2

level to obtain certification as a champion or grand champion dog, maintain contact with established fighters from around the country; and generate substantial income from gambling and the sale of fighting animals. The pit bulls are bred and raised almost exclusively for fighting purposes. Dog fighting breeders and owners, such as the individuals described in this affidavit keep their dogs solely for fighting and breeding purposes. Typically, fighting pit bull dogs are bred through numerous successive generations of other fighting dogs. Breeders and owners select the strongest, most capable fighting dogs and successively breed, sell, and fight only those dogs that display aggressive traits, are strong competent fighters, or otherwise advance a fighting dog's bloodline and genetic traits.

8. The puppies that result from dog fighter's breeding programs are most often tested and evaluated to determine those that exhibit aggressive behavior. Dogs that exhibit aggressive behavior are tested by the dog fighter in a series of events referred to as "rolls." Rolls are fights between two dogs that are used by dog fighters as a means of building confidence and exposing their prospective fighting dogs to a variety of fighting styles. Typically, little to no money is wagered for "roll" fights. "Roll" fights are looked upon by dog fighters as a way of testing younger fighting prospects to determine whether they have "game." A prospect fighting dog is considered to have "game" if it engages other animals in a fight and continues to engage in fighting behavior even if the two animals are broken apart after getting hot and tired, restrained, and then allowed to engage each other again. The more aggression a prospect shows toward the other animal in the roll, the more "game" the prospect fighting dog is believed to have.

9. Once a dog fighter decides to enter a prospect into a match fight, the dog is "hooked," or set up by a promoter. The dog undergoes a conditioning process dog handlers refer to as the "keep." The "keep" is typically conducted six to eight weeks prior to a scheduled match. A typical "keep" or training program includes the extensive use of treadmills, cat-mills or cat-jennies, used to run and exercise the dogs; swimming; weight pulls, used to increase a dog's strength; daily monitoring of a dog's body fat, food and water intake; and the administration of drugs, vitamins, and other medicine. Some of the drugs used include steroids to build muscle mass and increase aggression; pain killers such as Dilaudid, Talivin, and Codeine; and antibiotics to fight bacterial infections dogs might develop from fighting wounds.

10. Dogs matched for future fights are expected to achieve their established target weight by the scheduled matches. Verbal contracts are entered into between owners and handlers prior to matches. During this time, owners of the

3

respective fighting dogs pay "forfeit money" which is mailed, wired, hand delivered, or obtained by money order by the promoter of the upcoming match. A fight or match is "hooked" once the participants have paid the forfeit money and are preparing for the actual match.

11. Because of the very nature of dogs and their genetic dispositions, when not in transport, fighting pit bull terriers are typically in pens, cages, or on chains. In rural settings, dogs are often kept outside, on curtilage of property. They are typically on chains, sheltered by half barrels, homemade dog houses, or other improvised shelters, and kept apart from other dogs and animals due to their aggressive nature. Dogs are frequently kept under dense foliage or trees to shelter them from inclement weather conditions and to conceal their presence and numbers from law enforcement detection. Outbuildings and detached structures are used to store training equipment, food and medical supplies.

12. Prior to the actual fights, the animals are weighed. The animals must weigh the previously agreed upon weight or less for which the match was promoted. If a dog fails to achieve the target weight limit, or if the owner of the dog refuses to fight, or if the dog does not arrive at the fight on time the "forfeit" is paid to the opposing owner/handler. The remaining bet or wager money is often held by the fight promoter or other individual agreed upon by both owners.

13. After the dogs are weighed, the dogs are washed. Typically, the owner or his/her designee will wash the opposing owner's dog. The dogs are washed with water, milk, or other substances meant to prohibit an owner or handler from putting a foreign chemical substance on their animal that would cause their opponent's dog not to engage in biting their animal to make their opponent's dog sick.

14. Match fights can last anywhere from several minutes to several hours. At the beginning of a fight, two dogs fight until a turn (dog turns head and shoulders to avoid fighting) is called on one of the dogs. If the referee calls a "turn" the fight is temporarily stopped while the dogs go to their handlers. The dogs are then returned to the "scratch lines," or starting lines, typically in opposing corners of the box. The dogs are then released and allowed to continue to fight. A dog fight continues until one dog can no longer fight, jumps out of the box, does not attack the opposing dog after a scratch (the dog that turned first, must scratch first), or an owner or handler picks their dog up. The referee of match fight(s) declares the winner.

15. Dog fighters usually kill their dogs after roll fights and or match fights if the dog loses, fails to show the desired aggression, does not perform to the owner's expectations, or is seriously injured. Inhumane methods are often used to kill the dogs, such as shooting, electrocution, drowning, blunt force, or hanging. If a dog does survive the fight, but is severely injured, it can die from blood loss, dehydration, or infection.

16. Security for dog fights is a large concern during animal fighting ventures. In most instances, most, if not all participants in dog fights are armed with weapons. Dog owners keep and use firearms in part, to protect the premises where illegal activities occur, to protect locations where fighting pit bull terriers are kept due to their value, and to protect the large amounts of U.S. currency wagered on dog fights. During fights, counter-surveillance is utilized by the fight promoter or facilitator to spot and thwart law enforcement discovery and/or observation. Often, the location of the dog fight is a closely guarded secret until shortly before the fight. The entrance to the fight location is closely monitored and guarded by individuals trusted by the fight promoter or facilitator. Unknown fight attendees typically have to be vouched for by other well respected dog fighters in order to attend. Those attempting to attend a dog fight whom have not been vouched for, will often be turned away.

17. "Underground" publications similar to magazines are routinely published and distributed to readers through periodic subscriptions. These publications are commonly distributed at animal fights, via the United States Postal Service, via electronic mail, or viewed on various "online" sites. Subscribers must first be vouched for by a current subscriber. These publications describe and report on recent fight details and past results from around the county using coded language. They also describe various "kennels" or dog breeders who raise dogs for animal fighting purposes. Detailed ledgers and records specifically depict how certain dogs performed during a particular fight, together with the duration and outcome of fights. Kennels and owners also depict various treadmill exercise, "weight pull" competitions, etc. of various dogs in an effort to attract dog fighting buyers and other owners for future matches.

### Factual Basis for Probable Cause

18. Based on my investigation, the following facts, among others not included for the purpose of this affidavit, are known:

5

19.     Between 2010 and 2013, law enforcement interviewed numerous cooperating witnesses and confidential sources as part of this investigation. These witnesses reported that David Grace, also known as "Blackwood," promoted dog fights and fought dogs in dog fights mainly in South Alabama, West Georgia and North Florida. As the promoter, Grace would be required to provide the location, the pit, scales, dog washing equipment, break sticks, and any other equipment needed for the dog fight. Grace would also be required to provide personnel that controlled access to the fight location, and act as lookouts. All witnesses reported that Grace charges an entry fee of between $50 and $100 per person for individuals to attend the dog fights. Grace's fights normally have between thirty and forty people attending.

20.     On or about June 28, 2013 a confidential source (hereinafter referred to as CS-1) reported that "Blackwood" was holding a major dog fight in either South Alabama or North Florida on June 29, 2013[1]. The FBI had a surveillance team in place to conduct surveillance of the dog fight. However, because CS-1 was unable to gain an invitation to the fight, CS-1 was unable learn the specific location of the fight. Therefore, FBI conducted no surveillance.

21.     CS-1 was shown the driver's license photos and advised he/she recognized the person in the photo, but did not identify him as "Blackwood.[2]" CS-1 further provided verbal directions to "Blackwood's" residence in Dothan. CS-1 later used Google Earth to locate the house where he/she has met "Blackwood". The address of the house CS-1 located using Google Earth was at 2608 Timothy Road, Dothan, Alabama. CS-1 knows an individual who took a fighting dog to be bred with one of Grace's dogs. The dog to be bred was taken to a location where many pit bulls were located. This location was not "Blackwood's" residence.

22.     On September 9, 2013, a proffer session was held with a defendant charged in U.S. District Court for the Middle District of Alabama with conspiracy related to his/her involvement in dog fighting. This cooperating defendant (hereinafter referred to as CD-1) advised that "Blackwood" had sponsored a dog fight just before the 4th of July, 2013. CD-1 stated that "Blackwood" charged $50

---

[1] This source (CS-1) has been found to be truthful in the past and the information provided by the source has been used in search warrant affidavits which have led to the seizure of drugs, money, and dog fighting evidence as well as providing probable cause for arrests on both the local and federal level. Therefore, your affiant believes that CS-1 is reliable.

[2] CS-1 did not identify the picture as any particular person, but said that he/she recognized the photo as of someone he/she had seen before.

a head for attendees at this dog match. According to CD-1, Larry Watford[3] fought a dog at this match against a black male that CD-1 knows as "Flip." Further, CD-1 stated that Watford won $3,900 as a result of the dog fight. CD-1 advised that "Flip" tried to increase the pot to $30,000, but Watford declined to raise the wager. CD-1 provided the name David Grace as "Blackwood's" true name with a phone number of (256) 625-9697.

23. The affiant subpoenaed Sprint for the subscriber information for (256) 625-9697. On October 3, 2013, your affiant was advised by Subscriber Specialist Abby Rollert for Sprint that (256) 625-9697 is subscribed to by David Grace, 2608 Timothy Road, Dothan, Alabama.

24. During subsequent interviews with CD-1, agents learned that "Blackwood" was part owner of a 42 pound female pit bull who fought in Tennessee on December 15, 2012. Further, in November of 2012, "Blackwood" fought a 46 pound male at a dog match in Seale, Alabama.

25. A check was conducted of the Alabama Law Enforcement Tactical System for a driver's licenses in the name of David Grace in the Dothan area. There were two possibilities David Bernard Grace and Lil David Antron Grace. Both listed 2608 Timothy Road as their address.

26. A second confidential source (CS-2) contacted the FBI and provided information concerning "Blackwood's" involvement in illegal dog fighting and drug dealing[4]. CS-2 stated he/she has known "Blackwood" for several years. CS-2 provided cell phone number (256) 625-9697 for "Blackwood." CS-2 recalled "Blackwood" having one dog fight around the July 4th, 2013 holiday and one dog fight after August 23, 2013[5]. CS-2 has been to dog fights promoted by "Blackwood" in Columbia, Alabama near the Georgia line. CS-2 has observed people from Georgia at these fights. The source provided a general location for "Blackwood's" house which is consistent with your affiant's prior investigation. CS-2 provided phone number (256) 625-9697 for "Blackwood." CS-2 has also known "Blackwood" to sell small amounts (gram quantity) of both powder and

---

[3] Larry Watford is a defendant in a federal dog fighting case in the Middle District of Alabama, case number 3:13-cr-100-WKW.

[4] CS-2 has provided information to law enforcement which has been used in search warrants which has led to the seizure of drugs, money, and dog fighting evidence as well as providing probable cause for federal arrests. Therefore, your affiant believes that CS-2 is reliable.

[5] August 23, 2013 is significant because on this date federal agents executed 13 search warrants and arrested 12 people for conspiracy to dog fight.

7

crack cocaine. CS-2 further advised that "Blackwood" keeps a majority of his pit bulls away from his house, but CS-2 does not know the location.

27. CS-1 and CS-2 know each other through dog fighting. However neither knows the other is cooperating with law enforcement and therefore their respective information should be viewed as independent of the other's.

28. On October 7, 2013 the affiant had verbal and e-mail correspondence Chris Schindler Manager, Animal Fighting Investigations Animal Cruelty, Rescue and Response Team for the Humane Society of the United States (HSUS) concerning "Blackwood". Schindler advised he is familiar with "BLACKWOOD" and provided the affiant with the following information: He has seen "Blackwood" posts on apbt.online-pedigrees.com[6] in the last few months that reference dogs for stud or sale as well as the pedigrees of the dogs with their photos. These posts are as recent as August, 2013. Many of these dogs are from bloodlines of known and/or convicted dogfighters. He also makes references to the dogs having "mouth" which is a common terminology used in organized dog fighting to describe a dog that causes devastating injuries during a fight. Numerous pedigrees entered by Blackwood reference 1XW, 2XW and CH which Schindler has learned is common terminology used in organized dog fighting to identify how many fights a dog has won[7]. In these postings, Blackwood also uses the following symbols ^ and * which is another way to identify the number of fights won and is used to evade law enforcement by using symbols. Schindler opined based on the information he viewed related to Blackwood and the dogs he advertises for sale and stud coupled with the terminology used in his discussions about the dogs he owns that they are currently being owned, bred and sold for the purpose of fighting.

29. A search warrant for David Grace's residence was authorized by U.S. Magistrate Judge Wallace Capel Jr. During the search on October 10, 2013 there were seven American Pit Bull Terriers (pit bulls) located in dog houses in "Blackwood's" backyard. Grace admitted breeding pit bulls, but denied any involvement in dog fighting. Also recovered from a storage building in Grace's backyard was a slat mill, which is a treadmill device commonly used for training pit bulls during the pre-match conditioning known as the keep.

---

[6] According to Chris Schindler, apbt.online-pedigrees.com is a website to promote dog fighting. The website caters to dogfighters in that it has sections of the website dedicated to breeding fighting dogs, conditioning fighting dogs and buying and selling fighting dogs. There is also a section of the website to post dogfight wins.

[7] 1XW means a one time winner of a dog fight, 2XW means a two time winner of dog fights, and CH means a champion. A "champion" is a term of art used in dog fighting which means the dog has won three dog fights.

30. During the interview Grace advised he also maintained 10-15 additional pit bulls at his mother's residence. Grace stated these dogs were for sale at PEDS-on-line (true name apbt.online-pedigrees.com) and were not scarred up. Grace advised his PEDS-on line name is "Blackwood." Grace voluntarily drove the affiant to the location, 11762 County Road 65, Abbeville, Alabama. Grace signed a consent to search form permitting the agents to enter the yard behind the residence. Assistance was sought from the Humane Society of the United States and Chris Schindler the manager for Animal Fighting investigations responded. Schindler took 26 dogs from the yard for safe keeping. Schindler reported he saw scarring indicative of fighting on all of the adult dogs. The dogs were maintained on heavy chains anchored to axles in the ground. The dogs were located under tree cover. The affiant has learned this is typical of dogs being used for dog fighting.

31. On October 17, 2013, your affiant again interviewed CS-2. During that interview, CS-2 told your affiant that he has bred a dog with one of "Blackwood's" pit bulls. CS-2 further stated that he paid "Blackwood" approximately $700 to breed with "Blackwood's" male dog. According to CS-2, "Blackwood" was aware that the dogs were being bred for fighting purposes. When questioned about how CS-2 knew that Blackwood was aware that the dogs were being bred for fighting purposes, CS-2 said that he and "Blackwood" talked about how much "game" the dog had and whether the dog had a good mouth. Further, CS-2 was aware that "Blackwood" was involved in fighting dogs himself.

32. On October 17, 2013, your affiant also spoke with CS-1. During that conversation, CS-1 explained that he/she had been present when "Blackwood" fought a dog on three occasions. Further, CS-1 explained that "Blackwood" would often loan/lease one of his fighting dogs to someone else to fight. That person with custody of the loaned/leased dog would condition the dog, take the dog to the fight and fight the dog. "Blackwood" would wager on his dog in the fight, but would not actively condition or participate in the fight itself.

33. Also on October, 17, 2013, your affiant questioned CD-1 further about "Blackwood." During that conversation, CD-1 explained that "Blackwood" was taking up the entrance fee at a dog fight that occurred on June 29, 2013 (See paragraph 22, regarding "Blackwood" hosting a fight just before 4th of July, 2013). Further, CD-1 said the entrance fee was $50 and that "Blackwood" handled the "weigh in" of the dogs for the fight.

## Conclusion

34. Based on the information set forth above it is respectfully submitted that there is probable cause to believe that David Bernard Grace, also known as "Blackwood" is involved in conduct which is violation of Title 18 U. S. Code Section 49 and Title 7 U.S. Code Section 2156.

Raymond B. Smith Jr. Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me
this 24th day of October, 2013

WALLACE CAPEL, JR.
United States Magistrate Judge